UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LUELLA BONNER,

                   Plaintiff,

      -against-

MICHAEL J. ASTRUE, Commissioner Social
Security Administration,

                   Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**07-CV-5015 (NGG)**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 03 2010 ★
BROOKLYN OFFICE

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Luella Bonner ("Bonner") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Social Security Administration's ("SSA's") denial of her request to reopen her December 9, 1996 application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Title XVI"), and for the SSA's denial of her claim for SSI under Title XVI for the period of June 16, 1980 to November 30, 1997. (Complaint (Docket Entry # 1).) Both parties move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Motion for Judgment on the Pleadings ("Commissioner's Motion") (Docket Entry # 13); Cross Motion for Judgment on the Pleadings ("Bonner's Motion") (Docket Entry # 21).) As set forth below, the court vacates the decision of the Administrative Law Judge ("ALJ") and remands proceedings for further development of the evidence.

**I.    STANDARD OF REVIEW**

    **A.    Rule 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard

1

of review under a Rule 12(c) motion is the same standard applied under a Rule 12(b)(6) motion. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive a Rule 12(b)(6) motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to considering the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B. Administrative Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "Legal error" consists of incorrect determinations on points of statutory or regulatory law made by the Commissioner. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). In assessing a legal determination made by the Commissioner, "[the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply

deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal." Id.

## II. BACKGROUND

Bonner was born on January 14, 1942. (Complaint ¶ 4.) As of the date of this Memorandum and Order, Bonner is sixty-eight years old. Bonner alleges that she has suffered mental illness since the death of her mother in 1966. (Id. ¶ 11.) Bonner also alleges that she has sought psychotherapy treatment since 1976 at the Advanced Center for Psychotherapy ("ACP"). (Id..) Bonner cites a 1976 medical report stating that she "neither seemed to have much motivation to study nor mental capabilities for quick learning," and a 1998 "intelligence evaluation" that she alleges diagnosed her with a "learning disorder and mental retardation." (Id. ¶ 10.) Bonner asserts that due to these conditions, she is disabled and therefore entitled to SSI-disability, due to a "mental impairment." (Id.)

On June 16, 1980, Bonner filed an application (the "1980 application") for SSI-disability based on her alleged mental impairment. (Id. ¶ 7.) On August 11, 1980, the SSA denied that application. (Id.) On December 9, 1996, Bonner filed a second application for SSI-disability (the "1996 application"). (Id. ¶ 8.) The SSA denied this application on March 5, 1997, and denied reconsideration on May 23, 1997. (Id.) Bonner did not appeal either of these rulings. (Id.) On December 10, 1997, Bonner filed another application (the "1997 application") for SSI-disability. (Id. ¶ 9.) The SSA granted the 1997 application with a disability-onset date of December 1, 1997. (Id.) Bonner has continuously received SSI-disability benefits since then. (Id.)

In 1995, the Second Circuit decided Dixon v. Shalala, 54 F.3d 1019 (2d Cir. 1995), a class action lawsuit against the SSA for illegally promulgating regulations that disallowed SSA

3

adjudicators from combining claimants' alleged disabilities to determine if their impairments were "severe," and for raising the standard of a "severe impairment" in contravention of Title XVI. The Dixon class consisted of SSI-disability applicants whose claims had been denied or whose benefits had been terminated between 1976 until 1983. See id. at 1021. The Second Circuit ordered SSA to reopen the claims of the Dixon class members, some 200,000 SSI-disability applicants. Id. at 1039. Bonner's 1980 application made her a potential member of the Dixon class. (Complaint ¶ 14.)

The Second Circuit required the SSA to use a rebuttable presumption framework in the event the SSA was unable to locate a potential class member's prior application. Dixon, 54 F.3d at 1034-35. The Second Circuit summarized the presumptions as follows:

> A class member whose records cannot be located will be presumed to be disabled if he or she received a decision awarding disability benefits for any period of disability subsequent to the one that forms the basis of class membership, and (1) it is medically reasonable to presume that he or she was disabled as of the date of the prior denial, or (2) he or she was 55 years of age or older at the time of the denial.
>
> Conversely, there will be a rebuttable presumption that a class member is not disabled if [] he or she received a denial or termination of benefits subsequent to the one that forms the basis of class membership . . . .

Id. (internal quotations omitted).

On February 29, 2004, Bonner received a letter from the SSA (the "Dixon letter"), stating that the SSA reviewed her 1980 application as a potential member of the Dixon class. (Complaint ¶ 15.) The letter stated that the SSA had been unable to locate her 1980 application, and "[c]onsequently, under the terms of the Dixon court order, we have applied the court-ordered presumptions in your case and have determined that you are not disabled." (Id., Ex. B.) In a check-box menu at the bottom of the Dixon letter under the heading "Why You Are Not Disabled and Not Entitled to Relief," the SSA checked the box reading: "You are not disabled

4

and not entitled to any relief under Dixon because . . . [y]ou received a denial . . . on a claim for . . . adult [SSI] disability benefits after your Dixon claim was denied." (Id.)

On April 23, 2004, Bonner filed a Request for Hearing challenging the denial of her Dixon claim. At a January 31, 2006 administrative hearing, Bonner requested that the SSA reopen her 1996 application, sought clarification of the 1996 application's time period, and requested an adjournment to seek medical evidence. (Id. ¶ 17.) The ALJ granted the adjournment. (Id.)

On January 23, 2007, ALJ Sol A. Wieselthier held an administrative hearing on Bonner's requests and issued an unfavorable decision on March 20, 2007. (Id. ¶ 18.) The ALJ stated that Bonner's request to reopen her 1996 application was not properly before him because a denied SSI-disability claim filed after July 19, 1983 – the end date of the Dixon class – need not be reopened under Dixon. (Id., Ex. C ("Notice of Decision"), at 5.) The ALJ also denied Bonner's petition for SSI-disability from the date of the 1980 application to the date of the 1996 application (the "relevant time period"). (Id., at 11.)

In denying Bonner's request for SSI-disability for the relevant time period, the ALJ engaged in the required five-step analysis promulgated by the Commissioner. See 20 C.F.R. § 404.1520. The court in Dixon summarized this analysis as such:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.

5

> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

54 F.3d at 1022 (internal citations omitted). Under the five-step analysis, the ALJ concluded that Bonner was not entitled to SSI-disability. (Id., at 11.)

Bonner appealed from the ALJ's decision, and on October 5, 2007, the SSA Appeals Council denied Bonner's appeal. (Id. ¶ 21, Ex. D.) Bonner timely filed her Complaint on December 4, 2007.

## III. DISCUSSION

### A. Subject-Matter Jurisdiction

#### 1. Consideration of the Request to Reopen the 1996 Application

The Commissioner argues that the court lacks subject-matter jurisdiction over Bonner's request to reopen her 1996 application. (Commissioner's Motion at 22-24.) The Commissioner first argues that the request to reopen Bonner's 1996 application was "not before the ALJ." (Commissioner's Motion at 22.) The court construes the Commissioner's argument to mean that the ALJ did not decide the issue of whether to reopen Bonner's 1996 application. Bonner does not respond to this argument.

In not granting Bonner's request to reopen the 1996 application, the ALJ stated that "pursuant to Dixon Court order [sic], if the class member received a final medical/vocational denial for any reason after July 19, 1983 . . . the Dixon reopening will not proceed past . . . the

6

date of filing of the application which was denied." (Notice of Decision at 5.) The ALJ reasoned that because Bonner's 1996 application was filed after July 19, 1983, "the issue regarding reopening of the [1996 application] is not before this Administrative Law Judge." (Id.) Despite the Commissioner's argument, these statements strongly indicate the request to reopen the 1996 application on the basis of <u>Dixon</u> "was before" the ALJ, notwithstanding his inapt phrasing of the level of consideration. The ALJ considered the request to reopen the 1996 application under his interpretation of <u>Dixon</u> and, based on its filing date, rejected the request. Therefore, the Commissioner's argument to the contrary fails.

    2.    <u>Denial of the Request to Reopen the 1996 Application</u>

*a. Jurisdiction over "Final Determinations"*

Federal District Courts have jurisdiction to review a "final determination of the Commissioner of Social Security . . . as provided in [42 U.S.C. § 405(g)]." 42 U.S.C. § 1383(c)(3). Section 405(g) of title 42 of the United States Code allows social security claimants, "after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, . . . to obtain a [judicial] review of such decision." 42 U.S.C. § 405(g). The statute does not define the phrase "final decision." Rather, 42 U.S.C. § 405(a) empowers the Commissioner to define it by regulation. <u>Sims v. Apfel</u>, 530 U.S. 103, 106 (2000); <u>Weinberger v. Salfi</u>, 422 U.S. 749, 766 (1975). As such, the pertinent regulation specifically excludes a "[d]enial of a request to reopen a determination or a decision" as a "final decision." 20 C.F.R. § 416.1403(a)(5); <u>Stellacci v. Barnhart</u>, No. 02-cv-8875 (SAS), 2003 WL 22801554, at *3 (S.D.N.Y. Nov. 24, 2003) (citing <u>Califano v. Sanders</u>, 430 U.S. 99 (1977)); <u>see also</u> <u>Torres v. Barnhart</u>, 417 F.3d 276, 283 (2d Cir. 2005) (Jacobs, J., concurring).

Generally, a claimant may not assert federal question jurisdiction under 28 U.S.C. § 1331 as an alternative basis for the court's jurisdiction should the provisions of 42 U.S.C. § 405(g) not

7

apply. 42 U.S.C. § 405(h); Salfi, 422 U.S. at 756-62. Nonetheless, where a claimant particularly alleges that a mental impairment prevented her from comprehending an SSA notice of administrative remedies and, consequently, failed to timely appeal a claim, "the claim is one of constitutional dimension and a district court has jurisdiction" to review the SSA's denial to reopen her claim outside the § 405(g) context. Polanco v. Barnhart, No. 00-cv-5131 (LTS), 2007 WL 943914, at *3 (S.D.N.Y. Mar. 27, 2007) (quoting Stieberger v. Apfel, 134 F.3d 37, 40 (2d Cir. 1997)) (internal quotations omitted); see also Titles II and XVI: Mental Incapacity and Good Cause for Missing the Deadline to Request Review, 1991 WL 208067 (S.S.A. July 1, 1991) (policy interpretation ruling) ("SSR 91-5p").

### b. Jurisdiction over the Denial of the Request to Reopen the 1996 Application as a "Final Determination"

The Commissioner argues that even assuming that the request to reopen Bonner's 1996 application "was before" the ALJ, an ALJ's denial of a request to reopen a claim does not constitute a "final determination" subject to judicial review under 42 U.S.C. § 1383(c)(3). (Commissioner's Motion, at 22-24.) Bonner asserts that the court does have jurisdiction over Bonner's request to reopen her 1996 application insofar as her mental impairment raises constitutional questions that grant the court jurisdiction outside the § 405(g) context. (Bonner's Motion, at 18-20.) Specifically, Bonner argues that SSR 91-5p grants a claimant "who presents evidence that mental incapacity may have prevented him or her from understanding the review process" more liberal time to appeal an SSA decision denying a claim or terminating benefits. SSR 91-5p, at *2; (id., at 18-20). Bonner contends that where a claimant has presented evidence that a mental capacity has prevented her from understanding the review process, and where an ALJ nonetheless refuses to reopen a denied claim, the claimant's arguments "raise[s]

constitutional claims" otherwise subject to judicial review. (Bonner's Motion, at 19); see Polanco, 2007 WL 943914, at *3.

In Stieberger v. Apfel, the Second Circuit reversed a district court determination that the claimant's allegations of mental illness did not raise a constitutional question sufficient for the court to exercise jurisdiction outside of the § 405(g) context. 134 F.3d at 41. There, the appellate court concluded that the claimant's assertion that she suffered from depression, neurosis, schizophrenia, and anxiety, "adequately met the heightened standard [it] require[d]" for the District Court to possess subject-matter jurisdiction outside of the § 405(g) context. Id. Similar to Bonner's case, the claimant in Stieberger asserted that the mental conditions that rendered her unable to comprehend her right to appeal were the same mental conditions for which she sought SSI-disability. Id. Citing Stieberger, other cases in this circuit have similarly found a jurisdictional basis outside the § 405(g) context where the claimant asserted it was the very mental disability for which she sought relief that made her unable to understand her administrative remedies. See Polanco, 2007 WL 943914, at *3 (finding jurisdiction where SSI-disability claims were for paranoid psychosis and schizophrenia); see also Stellaci v. Barnhart, No. 02-cv-8875 (SAS), 2003 WL 22801544, at *3 (S.D.N.Y. Nov. 24, 2003) (refusing to find jurisdiction where SSI-disability claims were for diabetes).

Although the ALJ's denial of Bonner's request to reopen her 1996 application did not constitute a "final determination" subject to judicial review, Bonner's particularized allegations of a mental impairment that impeded her ability to understand her right to appeal the denial of her 1996 application raise constitutional concerns that otherwise vest the court with subject-matter jurisdiction. Bonner alleges that she requested that the ALJ reopen her 1996 application because she suffered from a "mental impairment" that prevented her from appealing the denial of

9

that decision. (Complaint ¶ 17.) Bonner did indeed present evidence to the ALJ that she suffered from a mental incapacity around the time of her 1996 application that may have affected her ability to understand her right to appeal. The ALJ referenced this evidence in his decision, including medical reports diagnosing Bonner with depression, somatization, and anxiety since 1976; a secondary diagnosis of a learning disability in 1998; and the SSA's own 1998 determination that Bonner suffered from a disabling mental impairment. (Notice of Decision, at 7.) This is virtually identical to the situations in Stieberger and Polanco. Bonner's particularized allegations of her mental impairment, therefore, are sufficient for the court to possess subject-matter jurisdiction outside the § 405(g) context. See Stieberger, 134 F.3d at 41.

**B.      Request to Reopen the 1996 Application**

Bonner argues that the ALJ erred by denying her request to reopen her 1996 application. (Bonner's Motion, at 23.) The Commissioner does not substantively respond to this argument.

The ALJ denied Bonner's request to reopen the 1996 application because "pursuant to Dixon Court order [sic], if the class member received a final medical/vocational denial for any reason after July 19, 1983 . . . the Dixon reopening will not proceed past . . . the date of filing of the application which was denied." (Notice of Decision, at 5.) Because Bonner's 1996 application was subject to a final denial on March 23, 1997, the ALJ denied Bonner's request to reopen the 1996 application. (Id.) This constituted legal error.

Regardless of whether Bonner's 1996 application was entitled to a reopening under Dixon, Bonner's claim of mental impairment required the ALJ to reopen Bonner's 1996 application under SSR 91-5. Under Stieberger, SSR 91-5 requires the reopening of a previously denied claim where a claimant alleges that the underlying mental impairment prevented her from comprehending the SSA's procedures – regardless as to the claimant's Dixon status. 134 F.3d at

10

38-39. Because the ALJ failed to address Bonner's 1996 application in light of SSR 91-5, the ALJ's denial of Bonner's request to reopen her 1996 application was in error. The court remands proceedings for further development of the evidence as discussed below.

C.     **The Reopened 1980 Application**

In assessing Bonner's reopened 1980 application, the ALJ performed the typical five-step analysis usually required to determine eligibility for SSI-disability. (Notice of Decision, at 7-11.) Bonner argues that the because a presumption of disability applies to her 1980 application under Dixon, the ALJ committed legal error in engaging the typical five-step analysis. (Bonner's Motion, at 10-13.) The Commissioner argues that the pertinent regulations, in fact, require such an analysis when a claimant's file is missing and, therefore, the ALJ did not err. (Reply (Docket Entry # 24), at 2-3.)

The SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX") Chapter I-5-4-52, Part VI (the "Dixon procedures"),[1] specifies the procedures an ALJ should use in adjudicating a reopened Dixon claim where the claim file cannot be located. Part VI.A, entitled "Presumptions," presumes a claimant to be disabled where

> he/she received a favorable decision awarding benefits for any subsequent period of disability; and the medical evidence relevant to that decision demonstrates that, given the class member's condition at the time of the favorable decision (e.g., the impairment(s) at the time of the favorable determination reasonably related to that alleged in the original Dixon claim), it is reasonable to presume that he/she was disabled as of the date of the prior administrative determination which resulted in class membership (i.e., the earliest Dixon claim).

HALLEX I-5-4-52, Part VI.A.1. Where the SSA denied a claimant's application after July 19, 1983, however, the Dixon procedures, "[a]bsent evidence to the contrary, [require] a rebuttable presumption that a class member will be found not disabled." Id., Part VI.A.2. Part VI.C of the Dixon procedures, however, require "a de novo reevaluation of the class member's eligibility for

---

[1] Available at http://www.ssa.gov/OP_Home/hallex/I-05/I-5-4-52.html.

11

benefits based on all evidence in his or her file including newly obtained evidence" based on the typical five-step analysis. Id., Part VI.C.1. The Dixon procedures note that "[i]f the presumptions do not apply, the case must be reconstructed and reopened." Id.

Read together, these provisions require a presumptive finding of "disabled" for a claimant's reopened Dixon claim where a claimant has been successful on a subsequent disability claim and the medical evidence demonstrates that the prior Dixon claim and the successful application are related. See id., Part VI.A.1. De novo review of a Dixon claim by an ALJ is only required "[i]f the presumptions do not apply." Id., Part VI.C.1. The ALJ's de novo review of Bonner's 1980 application, therefore, was legal error. Bonner's successful 1997 application was a "favorable decision awarding [her] benefits" subsequent to her Dixon claim. See id., Part VI.A.1. The same successful 1997 application is "evidence to the contrary" that sufficiently rebuts any presumption Bonner may have been not disabled due to her unsuccessful 1996 application. See id., Part VI.C.1. Based on this framework – and not the typical five-step analysis – the ALJ should have conducted a hearing to determine whether

> the medical evidence relevant to [the 1997] decision demonstrate[d] that, given [Bonner's] condition at the time of the [1997 decision] . . . [her 1996 application was] reasonably related to the [1980 application such that], it [would be] reasonable to presume that [Bonner] was disabled as of the date of [her 1980 application].

See id., Part VI.A.1. Without information regarding whether Bonner's 1996 application was reasonably related to her 1980 application, there is not sufficient evidence to determine whether Bonner is entitled to a presumption of disability for her 1980 application. Accordingly, the court remands the proceedings for further development of the evidence on this issue.

### D. Consolidation of the 1980 Application and the 1996 Application

The Dixon procedures further require that "in all remand cases, the ALJ will consolidate the Dixon case with the appeal on the current claim." Id., Part VI.E.2. In light of the court's remand on Bonner's 1980 and 1996 applications, the court further directs the ALJ to consolidate both applications.

### IV. CONCLUSION

For the reasons discussed above, the court vacates the Commissioner's denial of Bonner's request to reopen her 1996 application, and also vacates the Commissioner's finding that Bonner was not disabled for the period of June 16, 1980 to November 30, 1997. On remand, the court directs the ALJ to combine Plaintiff's 1980 and 1996 applications. The court further directs the ALJ to conduct a hearing as to whether, in light of Plaintiff's successful 1997 application, it is medically reasonable to presume Plaintiff was disabled at the time of her 1980/1996 application. If so, the ALJ is directed to find Plaintiff disabled, and to calculate benefits accordingly. If not, the ALJ is directed to conduct a hearing, in accordance with HALLEX I-5-4-52 to determine whether Plaintiff was disabled for the period of June 16, 1980 to November 30, 1997.

SO ORDERED.

Dated: Brooklyn, New York
November 2, 2010

s/Nicholas Garaufis
NICHOLAS G. GARAUFIS
United States District Judge